1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,

11            Respondent,                    No. CR S-00-012 LKK KJM P

12        vs.

13   LAMANCE COOKIE BERT,

14            Movant.                        <u>FINDINGS AND RECOMMENDATIONS</u>

15   _____/

16            Movant is a federal prison inmate proceeding with counsel on a motion to vacate,

17   correct or set aside his sentence under 28 U.S.C. § 2255.  He alleges that he was denied a fair

18   trial and the effective assistance of counsel in three instances: counsel failed to seek a mistrial

19   when his comments were inadvertently broadcast into the jury room; counsel failed to seek a

20   mistrial when the court replaced the sole African-American juror when that juror was late; and

21   counsel failed to move for a mistrial when the jury saw security personnel restraining movant

22   during a brief power outage.  He also contends that his sentence was improperly enhanced under

23   unconstitutional sentencing guidelines.  Finally, he argues that the jury was not instructed to find

24   that movant was aware of the quantity and type of drugs in the bag he was carrying.

25   /////

26   /////

                                          1

1   I. <u>Background</u>

2           An indictment filed January 7, 2000, charged movant in four counts:

3   (1) possession of cocaine base with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1);

4   (2) possession of cocaine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1);

5   (3) possession of methamphetamine with the intent to distribute, in violation of 21 U.S.C.

6   § 841(a)(1); and (4) possession of marijuana with the intent to distribute.

7           The evidence at trial showed that on November 30, 1999, California Highway

8   Patrol Agent Robert Paskwietz and DEA Agent James Delaney, members of a multi-agency task

9   force investigating the movement of drugs on public transportation, had information about an

10  Erick Bert, a person they classified as a "suspicious traveler," who had purchased a train ticket

11  with cash twenty-four hours before the train left Merced.  RT 31-33, 83-86.  When the train was

12  stopped in Sacramento, Delaney had Erick Bert paged and movant responded.  RT 34, 86.

13          In response to Paskwietz's request, Bert permitted Delaney to search his duffel

14  bag, which did not yield any drugs.  RT 45-46, 90.  The officers then asked to search movant's

15  small bag; movant unzipped several of the compartments, giving the officers only brief glances

16  inside.  RT 48, 91.  Paskwietz and Delaney saw a container tightly wrapped in white plastic,

17  which they recognized as a container for drugs.  RT 48, 92.

18          Plaintiff resisted attempts to arrest him, struggling for about five minutes until he

19  was subdued.  RT 49-50, 93.  After plaintiff was arrested, the agents recovered three containers

20  of drugs from plaintiff's smaller bag.  RT 81.  These contained approximately 229 grams of

21  cocaine base, approximately 113 grams of cocaine base, approximately 109 grams of

22  methamphetamine, and approximately 28 grams of marijuana.  RT 142-143.

23          The jury found movant guilty of the cocaine and methamphetamine charges, but

24  not guilty on the marijuana charge.  RT 231-232.

25          After trial, the court granted plaintiff's motion for a judgment of acquittal as to

26  count one, in part; it found that the jury's verdict on that count did not support a conviction for a

2

1   violation of 21 U.S.C. § 841(b)(1)(a)(iii), although it was sufficient for a conviction of a

2   violation of 21 U.S.C. § 841(b)(1)(C).  See Order (Docket No. 87).  On March 6, 2001, movant

3   was sentenced to a total term of 160 months.  Docket No. 91.

4            Movant and the government appealed.  In a published opinion, the Ninth Circuit

5   vacated the district court's partial grant of the motion for acquittal and remanded the case for

6   resentencing.  United States v. Bert, 292 F.3d 649 (9th Cir. 2002).  In an unpublished decision,

7   the Court of Appeals rejected movant's challenges to the denial of his motion to suppress, to

8   Delaney's testimony that possession of a large quantity of drugs is consistent with an intent to

9   distribute them, to the sufficiency of the evidence regarding crack cocaine, to the jury instruction

10  that did not require the jury to find that movant was aware of the type or amount of drugs he

11  possessed, and to the failure to include the prior conviction used to increase his sentence in the

12  indictment.  United States v. Bert, 40 Fed. Appx. 466 (9th Cir. 2002).

13           On remand, movant was sentenced to a total term of 240 months.  Docket No.

14  111.  He appealed, again alleging that his sentence was improper because his prior conviction

15  was neither charged nor found by the jury and challenging the term of supervised release.  The

16  Court of Appeals upheld the sentence.  United States v. Bert, 83 Fed. Appx. 202 (9th Cir. 2003).

17  II.  Ineffective Assistance Of Counsel

18           The government argues that movant's ineffective assistance of counsel claim is

19  barred because the underlying substantive claim, the denial of a fair trial, could have been raised

20  on direct appeal.  Opp'n at 9-10.

21           Because a § 2255 challenge "may not do service for an appeal," a movant who

22  raises constitutional claims when no objection was made at trial and no claim of error was made

23  on appeal "must show both (1) 'cause' excusing his double procedural default, and (2) 'actual

24  prejudice' resulting from the errors of which he complains."  United States v. Frady, 456 U.S.

25  152, 165, 167-68 (1982).  "Cause" may be based on "some objective factor external to the

26  defense [that] impeded counsel's efforts to comply with the . . . procedural rule. . . ."  Murray v.

3

1  Carrier, 477 U.S. 478, 488 (1986).  Cause also may be established by attorney error that rises to

2  the level of constitutionally ineffective assistance of counsel.  United States v. Ratigan, 351 F.3d

3  957, 964-65 (9th Cir. 2003).

4          When the issue itself is ineffective assistance of counsel that was not raised on

5  direct appeal, slightly different rules apply.  As the Ninth Circuit has recognized:

6          Claims of ineffective assistance of counsel are generally
           inappropriate on direct appeal.  Such claims normally should be

7          raised in habeas corpus proceedings, which permit counsel to
           develop a record as to what counsel did, why it was done, and

8          what, if any, prejudice resulted.  We review ineffective assistance
           claims on direct appeal under two circumstances: (1) when the

9          record on appeal is sufficiently developed to permit review and
           determination of the issue or (2) when the legal representation is so

10         inadequate that it obviously denies a defendant his Sixth
           Amendment right to counsel.

11

12 United States v. Ross, 206 F.3d 896, 900 (9th Cir. 2000) (internal citations & quotations

13 omitted).  Even when the claimed ineffectiveness is apparent from the appellate record, a § 2255

14 movant need not show cause and prejudice for first raising the claim on collateral review if the

15 same lawyer represented him at trial and on appeal.  Abbamonte v. United States, 160 F.3d 922,

16 925 (2d Cir. 1998); United States v. Taglia, 922 F.2d 413 (7th Cir. 1991) (same); see Manning v.

17 Foster, 224 F.3d 1129, 1134 (9th Cir. 2000) ("cause" established when counsel wanted to raise

18 ineffective assistance, but counsel, whose effectiveness was questioned, refused to act).

19         Movant was represented by the same lawyer at trial and on both appeals.  The

20 claims of ineffective assistance of counsel are not barred.

21       A.  Counsel's Comments, Failure To Seek A Mistrial And Replacement Of The Juror

22         By the end of the first day of trial, the jury, but not the alternates, had been

23 selected.  Jury Selection RT 147; Docket No. 61.  The jurors were asked to report to the jury

24 deliberation room at 9:15 a.m. the next morning.  Jury Selection RT 149.

25         At 9:25 the next morning, the court reported that Juror Eight, Mr. Baker, was late

26 because of car troubles and proposed that Juror Eight be replaced by one of those waiting to be

questioned as potential alternate jurors.  <u>Id</u>. at 150.  Defense counsel demurred, because "to speak candidly, Number 8 is the only black juror.  Mr. Bert is black.  I would hate to lose him.  It would be our preference to try to wait a reasonable time and see if he's able to make it."  <u>Id</u>. at 150-151.  Court and counsel left the courtroom, but returned a few minutes later.  The court said:

> Gentleman, unfortunately the broadcast system was on when we had our discussion this morning about Mr. Baker being late or delayed, and the jury heard everything.
>
> I don't know how that affects your views about what ought to happen, but you obviously have to know that the jury heard our discussion about Mr. Baker, Mr. Baker being the only black on the jury and so forth.
>
> Does anybody care?
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> MR. BALAZS [trial counsel]: I guess I'm a little concerned that I'm going to be now portrayed as playing up to the black or that –
>
> THE COURT: Yep.  Somebody on the jury may think you have played the race card.
>
> What do you want to do?
>
> Do you want a motion or don't you?
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> MR. BALAZS: May I have a minute with my client?
>
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> MR. BALAZS: I think we'll just accept the jury.
>
> THE COURT: Very good.
>
> MR. BALAZS: I hope that's the right decision.
>
> THE COURT: Well, who knows.  You know it is one of those things you never know.

<u>Id</u>. at 152-153.

Shortly after 10:00 a.m., the parties reconvened to discuss whether to replace Mr. Baker.  The court recounted that Mr. Baker had told his courtroom deputy that his car had broken

down in Lodi and he was returning to Stockton for another car.  RT 153.  The parties ultimately

decided to wait until 11:00 a.m before determining whether to excuse Mr. Baker.  RT 154.  The

court noted that "it is taking longer to select the jury than it is going to be to try the case, and

that's an unreasonable allocation of judicial resources."  RT 155.  When Mr. Baker had not

appeared by 11:00 a.m., both counsel accepted the court's invitation to stipulate to excuse Mr.

Baker and choose a replacement.  RT 155.  The court agreed that both counsel could use the

peremptory challenges they had not used in selecting the twelve jurors.  RT 156.

> 1.  Failure To Seek A Mistrial

Trial counsel has attempted to fall on his sword by submitting a declaration,

which reads:

> Upon learning that my comments had mistakenly been broadcast
> into the jury room, I should have but failed to move for a mistrial.
> By failing to move for a mistrial, I believe I rendered ineffective
> assistance of counsel.  Reasonably competent counsel would have
> moved for a mistrial.[1]  And Judge Karlton almost certainly would
> have granted one.

Motion To Correct (Mot.), Ex. B.  Trial counsel does not disavow any strategic or tactical

purpose for his decision.

Current counsel provides almost no argument in support of this portion of the first

claim; in the initial motion, she simply asserts that this failure adds up to ineffective assistance of

counsel.  Mot. at 4.  In the traverse, she cites Strickland v. Washington, 466 U.S. 668 (1984),

and argues that even if the decision not to request a mistrial was strategic, which she apparently

does not concede, it was nevertheless not reasonable.  Traverse at 2-3.

As the government suggests, this off-hand argument and trial counsel's

conclusory declaration may well be insufficient to overcome the presumption that trial counsel

---

[1]  Current counsel has made no attempt to qualify Mr. Balazs as an expert witness on
questions of the effective assistance of counsel; the court will disregard his claims as to what
reasonably competent counsel would have done in this situation.

1    acted reasonably.  Opposition (Opp'n) at 16.  The court need not reach this question, however,

2    because petitioner has not established prejudice from trial counsel's failure to act.

3            The federal law on claims of attorney ineffectiveness is clear:
             First, the defendant must show that counsel's performance was
4            deficient.  This requires showing that counsel made errors so
             serious that counsel was not functioning as the 'counsel'
5            guaranteed by the Sixth Amendment.  Second, the defendant must
             show that the deficient performance prejudiced the defense.
6

7    Strickland, 466 U.S. at 687.  "[T]he performance inquiry must be whether counsel's assistance

8    was reasonable considering all the circumstances."  Id. at 688.  However, a court must "indulge a

9    strong presumption" that counsel's conduct falls within the range of competence.  Iaea v. Sunn,

10   800 F.2d 861, 864 (9th Cir. 1986).

11           It also is petitioner's burden to establish prejudice:  "A defendant must show that

12   there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

13   proceeding would have been different.  A reasonable probability is a probability sufficient to

14   undermine confidence in the outcome."  Strickland, 466 U.S. at 694.  A court may consider the

15   prejudice component of the Strickland inquiry before determining whether counsel's actions

16   were reasonably competent:  "The object of an ineffectiveness claim is not to grade counsel's

17   performance.  If it is easier to dispose of an ineffectiveness claim on the ground of lack of

18   sufficient prejudice . . . that course should be followed."  Id. at 697.

19           The parties assume that the measure of prejudice in this situation is whether the

20   district judge would have granted a motion for a mistrial following the revelation that the sound

21   equipment was on when counsel made his comments about the missing juror's race.  This is not

22   the case.

23   /////

24   /////

25   /////

26   /////

In <u>Lockhart v. Fretwell</u>, 506 U.S. 364 (1993), the Supreme Court observed:

> Under our decisions, a criminal defendant alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Thus, an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective. To set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him.

<u>Id</u>. at 369-70 (internal quotations, citations and footnote omitted). Under <u>Fretwell</u>, to show prejudice, movant must demonstrate that counsel's failure to move for a mistrial means that movant was tried by a biased jury, an inquiry ultimately focused on the movant's right to a fair trial. Movant has made no attempt to meet his burden of proof.

Even though there is no dispute that the sound equipment was turned on, movant has not suggested, much less demonstrated, that the jurors actually heard or understood the context of trial counsel's comments. <u>See</u> <u>United States v. Plunk</u>, 153 F.3d 1011, 1025 n.12, <u>as amended by</u> 161 F.3d 1195 (9th Cir. 1998), <u>overruled on other grounds</u>, <u>United States v. Hankey</u>, 203 F.3d 1160, 1169 n.7 (9th Cir. 2000) (defendant alleged that jurors were exposed to extrinsic evidence because they were given a dictionary, but did not show that jurors looked up any words; dictionary removed from jury room within two minutes after it was provided). It is true that the district judge said that the "jury heard everything," Jury Selection RT 152, but it is not clear from the record whether this was an assumption or was based on some knowledge the judge had gained through inquiry.

In addition, counsel has not attempted to explain how trial counsel's comments could have caused the jurors to be biased against movant. In <u>United States v. Guzman</u>, 450 F.3d 627, 629 (6th Cir. 2006), <u>cert</u>. <u>denied</u>, ___ U.S. ___, 127 S. Ct. 1160 (2007), the Court of Appeals considered a challenge to a jury, allegedly tainted by comments made by those venire members who previously had served on juries; the comments suggested that the defendants tried by those juries had been guilty. The Court of Appeals rejected the challenge to the jury's

1    impartiality, noting the defendant had presented no evidence of actual bias to counter the

2    presumption that jurors are impartial.  The <u>Guzman</u> court surveyed the law from other circuits as

3    well, noting that statements during voir dire about the criminal justice system, about the impact

4    of crime, and even about the defendant's criminal record did not show that the jury ultimately

5    seated was biased against the defendant.  <u>Id</u>. at 630-31.

6           Trial counsel's comment in this case had nothing to do with movant's guilt or

7    innocence, about the facts of the case or the applicable law, or even about a juror's approach to

8    the case.  <u>Compare</u> <u>Mach v. Stewart</u>, 137 F.3d 630 (9th Cir. 1997) (venire in child molest case

9    tainted when venire member, a social worker, said she had never known a child to lie about being

10   molested); <u>United States v. Rosenthal</u>, 454 F.3d 943, 950 (9th Cir. 2006) (juror consulted

11   attorney friend, who told her she could get into trouble if she went outside the instructions; this

12   was "tantamount to a substantive legal discussion").  At most, the comments suggested that trial

13   counsel's strategy was perhaps somewhat distasteful, a reliance on the "race card" as the district

14   court observed.  That the jury might deem counsel obnoxious or in poor taste does not translate

15   into impermissible bias against movant.  <u>See</u> <u>Davis v. Woodford</u>, 384 F.3d 628, 650-51 (9th Cir.

16   2004), <u>cert</u>. <u>dismissed</u>, 545 U.S. 1165 (2005).

17          In addition, as the government has argued, the jurors were instructed to consider

18   only evidence admitted in the case and to disregard "anything that you may have seen or heard

19   outside the courtroom.  The arguments and questions of counsel are not evidence. . . ."  RT 216-

20   217.  The jury is presumed to follow this instruction; movant has presented nothing rebutting this

21   presumption.  <u>United States v. Heredia</u>, 483 F.3d 913, 923 (9th Cir. 2007), <u>petition for cert. filed</u>,

22   __ U.S.L.W. ___ (Aug. 1, 2007) (No. 07-5762).

23          Accordingly, because movant has not shown that the jurors heard trial counsel's

24   comments or that the comments destroyed the impartiality of the jury, he has not shown that he

25   was prejudiced by trial counsel's failure to move for a mistrial.

26   /////

9

1        2.  <u>Stipulating To The Removal Of Juror Baker</u>

2              Movant argues that had trial counsel objected, rather than stipulated, the trial court

3    would not have removed the sole black juror or that, even if the court had removed the juror over

4    objection, that determination would have been reversed on appeal following timely objection.[2]

5    Mot. at 4; Traverse at 4.  The government counters that the trial judge's decision was well within

6    his discretion and that movant has presented nothing but speculation that trial counsel's objection

7    would have changed the trial judge's mind.  Opp'n at 17-18.

8              The parties again mistake the standard of prejudice in this case.  It is not enough

9    to show that the trial judge would have delayed the trial until juror Baker arrived;[3] instead,

10   movant must show not only that the judge would not have excused the juror but also that the

11   result of the trial would have been different.  <u>See</u> <u>United States v. Brothers</u>, 438 F.3d 1068, 1071-

12   72 (10th Cir. 2006), <u>cert</u>. <u>denied</u>, ___ U.S. ___, 126 S. Ct. 2946 (2006) (no error when "no

13   indication that the court's replacement of the juror . . . resulted in a biased jury or an otherwise

14   unfair trial"); <u>United States v. Alexander</u>, 48 F.3d 1477, 1485 (9th Cir. 1995) (same).

15             Movant suggests that relieving the only minority juror shows that movant was

16   prejudiced.  However, no different rules apply when the juror to be replaced is the only member

17   /////

18   /////

19   /////

20   /////

21   /////

22   /////

23   ───────────────

24       [2]  The case upon which movant relies, <u>United States v. Tabacca</u>, 924 F.2d 906 (9th Cir. 1991), involved the trial court's dismissal of a deliberating juror, a determination guided by different standards.

25

26       [3]  It is arguable that movant has failed to show even this, in light of the trial court's comments about the length of the jury selection *vis-a-vis* the length of the trial.

of a minority:

> We have not overlooked the facts that . . . defendant was an American of Hispanic ancestry, that the replaced juror was Black, and that the alternate juror who replaced him was a White of Anglo-Saxon ancestry.  If, which is, of course, not provable, the replacement adversely affected defendant it was not the kind of prejudice which justifies our reversal of the trial judge's discretion. Every replacement involves a change in the jury's composition. How much weight should be given to this factor is a matter for the sound discretion of the trial judge.

United States v. Rodriguez, 573 F.2d 330, 332-33 (5th Cir. 1978); see also United States v. Brewer, 199 F.3d 1283, 1287 (11th Cir. 2000) (defendant's claim that removal of sole black juror diluted black representation on the jury not supported by the record or by showing of an effect on the verdict); United States v. McMasters, 90 F.3d 1394, 1402 (8th Cir. 1996) (court's discretion to remove a juror is not more limited when that juror is the sole African-American); and see Strickland, 466 U.S. at 695 ("An assessment of the likelihood of a result more favorable to the defendant must exclude the possibility of arbitrariness, whimsy, caprice, 'nullification,' and the like.").  Because movant has not shown that replacing Juror No. 8 resulted in actual prejudice, he cannot show prejudice from trial counsel's decision to stipulate rather than to object to the replacement.

B. Security Measures In The Courtroom

With his traverse, movant has submitted his own declaration along with a declaration from his mother, both describing the reaction of a courtroom security officer when the courtroom lights went out briefly.  Movant says:

> At one point after the jury was selected, the lights in the courtroom went off for a short period.  When they came back on, the jury could see me being held face down against the defense table by U.S. Marshals.  At that point, I distinctly remember seeing a female juror with a surprised reaction on her face.  I also remember my mother, who was in the courtroom, saying something to the marshals like "get your hands off my boy."

Traverse, Declaration of Lamance Cookie Bert.

/////

1            Movant's mother says:

2            I was sitting in the audience behind my son and his attorney.
     During the trial, the lights in the courtroom went off for a short
3    time.  When they came back on, I could see my son being held face
     down on the table by some court security.  I don't remember my
4    exact words, but I remember saying . . . something like, get your
     hands off my baby.

5

6    Traverse, Declaration of Diana Hadly.

7            The government has submitted the declaration of Ronald Pronechen, who

8    describes the scene somewhat differently:

9            . . . I was in the courtroom, assigned to assist in guarding the
     defendant who was on trial.  During the trial, the lights went out
10   briefly.  I was sitting directly behind the defendant before the lights
     went out.  When the lights went out, I advanced to the defendant,
11   placed my hands upon his shoulders, and softly told him, "Don't
     you move."  He complied.  Right after I said that, Deputy United
12   States Marshal Joe Neff, who was also in the courtroom, advanced
     toward my position and illuminated me and the defendant with a
13   flashlight.  The lights then came back on.  I then backed away from
     the defendant and the trial continued.

14
             At no time did I or Deputy Neff push the defendant's head down
15   onto the table.

16   Declaration of Ronald Pronechen ¶¶ 3-4.

17           Movant requests an evidentiary hearing to explore the different accounts of the

18   incident.

19           When section 2255 motions are based on alleged occurrences
     entirely outside the record, which if true would support relief, the
20   court must conduct a hearing on those allegations unless, viewing
     the petition against the record, its allegations do not state a claim
21   for relief or are so patently frivolous or false as to warrant
     summary dismissal.

22

23   Watts v. United States, 841 F.2d 275, 277 (9th Cir. 1988).  In this case, even if the description

24   provided by movant and his mother is true, it does not support his claim for relief; no hearing is

25   required.

26   /////

1          As the Supreme Court has explained, a juror might, or might not draw inferences

2 adverse to a criminal defendant from the presence of security personnel in the courtroom.

3 <u>Holbrook v. Flynn</u>, 475 U.S. 560, 568-69 (1986).  And in determining whether the presence of

4 security personnel deprived a defendant of a fair trial, a court must evaluate whether there was

5 "an unacceptable risk . . . of impermissible factors coming into play."  <u>Id</u>. at 570 (internal

6 quotation marks omitted).  To do so, the court must "look at the scene presented to jurors and

7 determine whether what they saw was so inherently prejudicial as to pose an unacceptable threat

8 to defendant's right to a fair trial . . . ."  <u>Id</u>. at 572.

9          Assuming movant's account to be true, the jurors saw a member of the courtroom

10 security staff holding defendant down on counsel table for a few seconds when the lights came

11 back on following a black out.  There is no suggestion in movant's declaration that great force

12 was being used, that mechanical restraints were employed, or that he was held down for more

13 than a few seconds in the jury's view.

14          Those cases involving jurors' fleeting view of defendants in handcuffs and

15 shackles provide the closest analogy to this case.  In these cases, the Courts of Appeals

16 recognize that a juror's brief, inadvertent view of a defendant in shackles will not violate due

17 process in the absence of a showing of actual prejudice.  <u>United States v. Halliburton</u>, 870 F.2d

18 557, 560-61 (9th Cir. 1989); <u>Ghent v. Woodford</u>, 279 F.3d 1121, 1133 n.11 (9th Cir. 2002)

19 (prejudice not presumed when defendant not shackled throughout the entire trial but rather seen

20 in handcuffs only when transported to and from the courtroom on several occasions).  Although

21 the "brief, inadvertent views" often occur outside the courtroom while the defendant is being

22 moved, the Ninth Circuit has applied the same standard to a brief, inadvertent view in the

23 courtroom.  <u>Wilson v. McCarthy</u>, 770 F.2d 1482, 1485 (9th Cir. 1985)[4]; <u>see also</u> <u>Allen v.</u>

24 <u>Montgomery</u>, 728 F.2d 1409, 1413 (11th Cir. 1984) (no error when jury saw defendant escorted

---

25

26     [4] <u>Wilson</u> concerned the jury's view of a shackled defense witness as he left the witness
stand, but the court noted the standard of review was the same as for a shackled defendant.

1    to and from the courtroom in handcuffs).

2           What the jurors saw in this case was not so inherently prejudicial so as to deprive

3    movant of a fair trial: they saw a reaction to an unexpected event and a potential security

4    problem, a reaction which was apparent for a very short time after the lights came back on.

5    Nothing in the tableau presented to the jurors suggested that security personnel deemed movant

6    to be a danger or a flight risk in the normal course of business, but showed that those personnel

7    were alert to the security problems posed by an unexpected event. Compare United States v.

8    Leach, 429 F.2d 956, 962 (8th Cir. 1970) ("[i]t is a normal and regular as well as a highly

9    desirable and necessary practice to handcuff prisoners while they are being taken from one place

10   to another, and the jury is aware of this."); see also United States v. Cochran, 475 F.2d 1080 (8th

11   Cir. 1973) (mistrial not required when marshals restrained and handcuffed defendant after he

12   stood and exclaimed during testimony).

13          Because movant cannot show he was prejudiced, he cannot demonstrate that

14   counsel was ineffective for failing to move for a mistrial after this incident.

15   III.  Use Of Unproven Prior Conviction And Other Sentencing Problems

16          A.  Use Of Prior Conviction To Increase The Sentence

17          As noted, movant ultimately was sentenced to a total term of 240 months based on

18   the amount of drugs and a prior drug conviction.  21 U.S.C. § 841(b)(1)(A)(iii); Bert, 292 F.3d at

19   649.  Movant argues that his sentence must be vacated because it was based in part on a prior

20   conviction not found to be true by the jury.  Mot. at 5-6.  He recognizes that the issue is

21   controlled by Almendarez-Torres v. United States, 523 U.S. 224 (1998), but predicts it will "be

22   overruled in the near future . . . ."  Traverse at 6.  This prediction has not come to pass; this issue

23   has no merit.

24   /////

25   /////

26   /////

1
           B.  <u>Use Of Facts Not Charged Nor Proven To Increase The Sentence;
2
              Unconstitutionality Of Sentencing Guidelines</u>

3
          Movant argues that the sentencing guidelines are unconstitutional and that his
4
sentence was based on 229 grams of cocaine when the jury found only that the offense involved
5
more than 50 grams.  Mot. at 6-7.  He raises an argument based on <u>Blakely v. Washington</u>, 542
6
U.S. 296 (2004) and <u>United States v. Booker</u>, 543 U.S. 220 (2005).

7
          The basic underpinning of movant's challenge is incorrect, for his sentence was
8
not based on the sentencing guidelines.  Instead, the 240 month sentence was the mandatory
9
minimum based on the combination of movant's possession of 50 grams or more of a substance
10
containing cocaine base and his prior drug conviction.  Mot. at 3; Sentencing Memorandum at 2
11
(Docket No. 110); 21 U.S.C. § 841 (b)(1)(A)(iii).  The Ninth Circuit has held that neither <u>Blakely</u>
12
nor <u>Booker</u> have any impact on the imposition of a mandatory minimum sentence.
13
<u>United States v. Decoud</u>, 456 F.3d 996, 1021(9th Cir. 2006), <u>cert</u>. <u>denied</u> <u>sub</u> <u>nom</u>. <u>Trice v.</u>
14
<u>United States</u>, ___ U.S. ___, 127 S. Ct. 2937 (2007); <u>United States v. Dare</u>, 425 F.3d 634, 641
15
(9th Cir. 2005), <u>cert</u>. <u>denied</u>, ___ U.S. ___, 126 S. Ct. 2959 (2006).

16
          Even if <u>Booker</u> and <u>Blakely</u> apply to the mandatory minimum in this case, they do
17
not apply retroactively to cases on collateral review.  <u>United States v. Cruz</u>, 423 F.3d 1119, 1120-
18
21 (9th Cir. 2005) (<u>Booker</u>), <u>cert</u>. <u>denied</u>, 546 U.S. 1155 (2006); <u>Cook v. United States</u>, 386 F.3d
19
949 (9th Cir. 2004) (<u>Blakely</u>).  Movant has made no showing that either of these two cases is
20
incorrect; the court declines to engage in an analysis based on <u>Teague v. Lane</u>, 489 U.S. 288
21
(1989) when movant's counsel has not even cited the case.  <u>Arredondo v. Ortiz</u>, 365 F.3d 778,
22
781 (9th Cir. 2004).

23
          C.  <u>Ineffective Assistance Of Counsel</u>

24
          Movant also appears to make the separate argument that trial and appellate
25
counsel were ineffective for failing to raise the arguments addressed above.  Mot. at 7.  As noted,
26
/////

1   however, the arguments would not have assisted movant.  Counsel was not ineffective.  <u>James v.</u>

2   <u>Borg</u>, 24 F.3d 20, 27 (9th Cir. 1994).

3   IV.  <u>Knowledge Of Drug Quantity And Type</u>

4              Finally, movant argues that under <u>Apprendi</u> and <u>Blakely</u>, the jury must be

5   instructed that a defendant was aware of the nature and quantity of the drugs he carried for

6   conviction.  Mot. at 8-9.  The government argues that these claims were raised and rejected on

7   direct appeal and cannot be relitigated in this motion to vacate the sentence.  Opp'n at 28-29.

8              In <u>United States v. Bert</u>, 40 Fed. Appx. 466 (2002), the Court of Appeals noted:

9              *Apprendi* did not change the long-established rule that the
            government need not prove that the defendant knew the *type* and
10           *amount* of a controlled substance that he imported or possessed;
            the government need only show that the defendant knew that he
11           imported or possessed *some* controlled substance.

12  <u>Id</u>. at 470 (internal quotation & citation omitted; emphases in original).

13             The Ninth Circuit has held:

14             When a defendant has raised a claim and has been given a full and
            fair opportunity to litigate it on direct appeal, that claim may not be
15           used as basis for a subsequent § 2255 petition.

16  <u>United States v. Hayes</u>, 231 F.3d 1132, 1139 (9th Cir. 2000).  The claims thus litigated become

17  law of the case.  <u>Id</u>.; <u>see</u> <u>also</u> <u>Feldman v. Henman</u>, 815 F.2d 1318, 1321 (9th Cir. 1987)

18  (collecting cases).  Movant has not shown how <u>Blakely</u> changes the general rule cited by the

19  Court of Appeals and has not otherwise shown he was denied a full and fair opportunity to

20  litigate this claim.  He cannot raise it now.

21             Accordingly, for the reasons set forth above, IT IS HEREBY RECOMMENDED

22  that:

23             1.  Movant's December 10, 2004 motion to vacate, set aside, or correct his

24  sentence pursuant to 28 U.S.C. § 2255 be denied; and

25             2.  The Clerk of the Court be directed to close the companion civil case

26  No. 04-2628 LKK KJM P.

1    These findings and recommendations are submitted to the United States District

2 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

3 days after being served with these findings and recommendations, any party may file written

4 objections with the court and serve a copy on all parties.  Such a document should be captioned

5 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

6 shall be served and filed within ten days after service of the objections.  The parties are advised

7 that failure to file objections within the specified time waives the right to appeal the District

8 Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

9 DATED:  August 30, 2007.

10

11    _____

12    U.S. MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24 2/bert0012.257

25

26